UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CYNTHIA KIDD,
o/b/o N.W.

                              Plaintiff.

                                                    **Hon. Hugh B. Scott**

                                                    15-CV-507-HBS

                  v.                                    (Consent)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


Before the Court are the parties' respective motions for judgment on the pleadings.  (Dkt.

Nos. 8, 10).

## INTRODUCTION

Plaintiff, Cynthia Kidd on behalf of N.W., brought this action pursuant to 42 U.S.C. §

405(g) to review the final determination of the Commissioner of Social Security that N.W. is not

disabled and, therefore, is not entitled to disabled childhood Supplemental Security Income.  The

plaintiff argues that the Administrative Law Judge ("ALJ") assigned to the case committed legal

error by: (1) failing to consider and find N.W.'s diagnoses of Oppositional Defiant Disorder

("ODD") and Conduct Disorder ("CD") to be severe impairments, (2) failing to find N.W.'s

gastrointestinal ("GI") problem a severe impairment, and (3) failing to find N.W.'s diagnosed

Attention Deficit Hyperactivity Disorder ("ADHD") to functionally equal Listing 112.11.  (Dkt.

No. 8).  The plaintiff contends that these errors led to an incorrect finding that N.W. was not

disabled under the Social Security Act.  (Dkt. No. 8).  The Commissioner responds by arguing

that the ALJ adequately considered all diagnosed conditions and treatment, and that the ALJ's

decision that plaintiff did not functionally equal Listing 112.11 was based on substantial

evidence and therefore was proper.  (Dkt. No. 10).

For the reasons below, the Court grants the Commissioner's motion in part.  The Court

also grants the plaintiff's motion in part.


## PROCEDURAL BACKGROUND

The plaintiff filed an application for Social Security Income on August 30, 2011, and

October 26, 2011.  That application was denied initially and the plaintiff filed a timely hearing

request.  The hearing occurred on October 22, 2013.  The plaintiff appeared before an ALJ, who

considered the case de novo and concluded, in a written decision dated March 27, 2014, that

N.W. was not disabled within the meaning of the Social Security Act.  The ALJ's decision

became the final decision of the Commissioner when the Appeals Council denied the plaintiff's

request for review.

The plaintiff commenced this action on June 9, 2015.  (Dkt. No. 1).  The parties moved

for judgment on the pleadings, and the motions were submitted on December 7, 2015 and

February 4, 2016.  (Dkt. Nos. 8, 10).


## FACTUAL, MEDICAL, AND EDUCATIONAL BACKGROUND

N.W. was born on May 25, 2001.  Tr. 57.  N.W. was a school-age child at the time his

application was filed, and is currently an adolescent.  Tr. 57.

In November 2004, N.W. was first evaluated by the Buffalo Hearing and Speech Center. Tr. 275.  N.W. was diagnosed with a moderate receptive language delay.  Tr. 275-279.  Speech-language services were recommended, but special education services were not.  Tr. 279, 283, 284-86.

In May 2009, N.W. was re-evaluated by the Buffalo City Schools.  Tr. 294-302.  School Psychologist Jeanne E. McDougall recommended behavioral interventions and maintaining N.W.'s special education classification of Speech Impaired.  Tr. 301-02.

In June 2011, N.W. was evaluated by the Monsignor Carr Institute.  Tr. 318-320.  Nurse Practitioner Gerard Turk and Psychiatrist Norma Panahon, MD diagnosed N.W. with ADHD, ODD, and CD.  Tr. 320, 321.  N.W. was assigned a Global Assessment of Functioning ("GAF") score of 45.  Tr. 320.  NP Turk recommended a medication regime of Concerta.  Tr. 320.

In January 2012, N.W. was evaluated by consultative examiner Rachel Hill, PhD, for a child psychiatric evaluation.  Tr. 331-35.  Dr. Hill noted N.W. had "occasional" encopresis.  Tr. 331.  Dr. Hill reported that N.W. could attend to, follow, and complete age-appropriate directions and tasks, maintain appropriate social behavior, respond to environmental changes, and interacted adequately with peers and adults.  Dr. Hill opined that N.W.'s prognosis was good, as his ADHD was "pretty well" controlled with medication.  Tr. 334-35.

In January 2012, N.W. was evaluated by consultative examiner Amy Atwater, a Speech and Language Pathologist, for a speech and language evaluation.  Tr. 336-339.  Ms. Atwater reported that N.W. had moderate receptive language delays and severe expressive language delays.  Tr. 338.  She opined that N.W.'s prognosis was good with continued intervention.  Tr. 339.

In January 2012, N.W.'s teachers described his behavior. N.W.'s third grade teacher opined that N.W. had difficulty focusing, working without distracting others, and staying on task. Tr. 170-177. N.W.'s fourth grade teacher opined that N.W. displayed confrontational behavior and had difficulty sitting still and following directions. Tr. 251. In September 2013, N.W. was evaluated by Buffalo City Schools for a psychological evaluation. Tr. 482-85. N.W.'s teacher had reported that N.W. had a positive response to his medication, but N.W. had not been taking his medication consistently and his academic performance was significantly impacted by difficulty attending and focusing and easily getting off task. Tr. 483. School Psychologist Amy Jo Crans-Stafford opined that N.W. would benefit from fewer distractions and transitions and a smaller classroom. Tr. 485.

In early 2013, N.W.'s psychopharmacology progress reports began to show improvement with Concerta and Risperdal. Tr. 452.

In May 2013, N.W. was referred to a gastroenterologist for his chronic constipation. Tr. 397-400. N.W. required a bowel cleanout procedure with polyethylene glycol, and in a July 26, 2013 letter, Dr. Adrian Chapa, MD explained that N.W. had been suffering from chronic constipation and encopresis "for the last 2 years." Tr. 395. On September 11, 2013, Dr. Razan Alkhouri, MD took a patient history of N.W. as a part of a medical report and explained that N.W. was suffering from encopresis, had been wearing diapers for the past two years, had been to the emergency room over three times in the past year, and had several cleanouts with no improvement. Tr. 384. Dr. Alkhouri noted that N.W.'s mother reported that N.W. had rock hard stool with occasional blood, and at one point N.W.'s constipation was so severe that his mother attempted to "take out" (disimpact) his stool with a butter knife when he was unable to pass it. Tr. 384. Several days after N.W.'s hospitalization, Dr. Alkouri recommended another cleanout

procedure due to N.W. having more problems with his bowels.  Tr. 384-86.   A "gut retraining program" diet was proposed, but this did not appear to completely solve the problem according to N.W.'s mother.  Tr. 25.

The ALJ found that N.W. was not engaged in substantial gainful activity.  Tr. 57.  The ALJ found that N.W. had the following severe impairments: ADHD and learning disorder.  Tr. 57.  The ALJ did not find N.W.'s GI problem to be a severe impairment because "this was not likely to last the required 12 months. . . . He wore diapers in case he could not get to the restroom."  Tr. 57.  The ALJ found that N.W. did not have an impairment or combination of impairments that medically equaled a listed impairment.  Tr. 57.  The ALJ found that N.W did not have an impairment or combination of impairments that functionally equaled a listed impairment.  Tr. 57.

When addressing N.W.'s ADHD, the ALJ opined that "much of his behavior was driven by selfishness and lack of control."  Tr. 62.  The ALJ attributed N.W.'s misbehavior and giving up when challenged as "what [he] wants to do and not because of any specific impairment."  Tr. 62.  The ALJ noted that N.W.'s teachers reported a positive response to his ADHD medication, although medication management was inconsistent, and that N.W.'s behavior could be managed when he took his medication.  Tr. 62-63.  The ALJ noted that N.W.'s mother reported that N.W. was doing better on medication and that his symptoms were controlled.  Tr. 63.  The ALJ noted N.W.'s major improvement on medication in June 2011 and N.W.'s ability to follow multi-step tasks with a 70% success rate.  Tr. 63.  The ALJ found N.W. was social, got along with peers, and could return to task when redirected.  Tr. 63.  The ALJ noted N.W. stopped grabbing things at an evaluation when asked to do so, and that N.W. stopped "messing around" with the

microphone at the administrative hearing when the ALJ asked him to stop.  Tr. 63.  The ALJ also noted N.W. played on the football team at school and doing well.  Tr. 63.

The ALJ found N.W. had a less than marked limitation in the domain of "attending and completing tasks."  Tr. 65.  The ALJ pointed to N.W.'s ability to attend when on medication.  Tr. 65.  The ALJ noted N.W. liked to play sports, color, draw, and play with the computer without problems.  Tr. 65.

The ALJ found N.W. had a less than marked limitation in the domain of "interacting and relating with others."  Tr. 66.  The ALJ opined that much of N.W.'s behavior was "what [he] wants to do" and "driven by selfishness and lack of self-control."  Tr. 66.  The ALJ also pointed out that N.W. was doing well playing on the football team, N.W.'s teachers reported a positive response to the ADHD medication, N.W. goes out independently in his neighborhood, N.W. has friends that he "hangs out" with, N.W. likes to play games with his friends, and N.W. likes wrestling and boxing.  Tr. 67. The ALJ noted that N.W gets upset when he does not get what he wants, does not think before he acts, and misbehaves when challenged.  Tr. 66.

The ALJ found N.W. had no limitation in the domain of "caring for yourself."  Tr. 69. The ALJ pointed to N.W.'s ability to dress, bathe, and groom himself age appropriately, and that N.W. helps in his house with doing the dishes and cleaning his room.  Tr. 69.

The ALJ also found N.W. had a less than marked limitation in the domain of "acquiring and using information, and no limitation in the domains of "moving about and manipulating objects," and "health and physical well-being."  Tr. 64, 67, 69.

**<u>DISCUSSION</u>**

**<u>Scope of Review</u>**

The only issue to be determined by this Court is whether the ALJ's decision that N.W. was not disabled is supported by substantial evidence.  <u>See</u> 42 U.S.C. § 405(g); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. Nat'l Labor Relations Bd.</u>, 305 U.S. 197, 229 (1938)).

**<u>Standard</u>**

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(C)(i).

In determining whether a child is disabled under the Social Security Act, the ALJ must follow a three-step process.  First, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  If the ALJ finds that the child is engaged in substantial gainful activity, then the child is not disabled and will not be awarded benefits.  <u>Id.</u>  If the ALJ finds that the child is not engaged in substantial gainful activity, then the analysis moves to the second step.  <u>Id.</u>

Second, the ALJ must determine whether the child has a "severe impairment."  20 C.F.R. § 416.924(b)-(c).  A "severe impairment" is an impairment that is more than a "slight

7

abnormality or a combination of slight abnormalities that cause no more than minimal functional

limitations." 20 C.F.R. § 416.924(c).  If the ALJ finds that the child's impairment or

combination of impairments is not severe, then the child is not disabled and will not be awarded

benefits.  If the ALJ finds that the child's impairment of combination of impairments is severe,

then the analysis moves to the third step.  Id.

Third, the ALJ must determine whether the impairment meets or is medically equivalent

to a listed impairment in the code.  20 C.F.R. § 416.924(d).  If the ALJ finds that the child's

impairment or combination of impairments meets or medically equals a listing, the individual is

considered disabled.  Id.  Alternatively, if the ALJ finds that the child's impairment or

combination of impairments does not meet or medically equal a listing, then the ALJ must

determine whether the child's impairment or combination of impairments functionally equals a

listing by considering the child's functioning  in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.924(a), (b)(1).  The child is classified as disabled if the child has (a) a "marked"

limitation in any two domains of functioning, or (b) an "extreme" limitation in any one domain

of functioning.  The child has a "marked" limitation when the impairment or combination of

impairments  interferes "seriously" with his ability to independently initiate, sustain, or complete

activities.  20 C.F.R. § 416.926a(e)(2).  The child has an "extreme" limitation when the

impairment or combination of impairments interferes "very seriously" with his ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3).  Courts consider the child's test scores, physical health, and day-to-day functioning when analyzing whether a limitation in a domain is "marked" or extreme."  20 C.F.R. § 416.926(a)(e)(4).  Courts must view the child as a "whole," as no single piece of information can establish whether a limitation is "marked" or "extreme."  Id.


**Application**

The plaintiff raises three main issues with the ALJ's determination that N.W. is not disabled within the Social Security Act.

First, the plaintiff argues that the ALJ erred when he did not consider N.W.'s diagnoses of ODD and CD, ultimately finding that these conditions did not constitute severe impairments at step two of the evaluation process.  (Dkt. No. 8).  Second, the plaintiff argues that the ALJ erred when he did not find N.W.'s diagnosed GI problem to be a severe impairment at step two of the evaluation process because "this was not likely to last the required twelve months." (Dkt. No. 8). The Commissioner responds to both of these assertions by arguing that the ALJ adequately considered all diagnosed conditions and treatment.  (Dkt. No. 10).

Third, the plaintiff argues that the ALJ erred when he did not find N.W.'s impairments to functionally equal a listed impairment.  (Dkt. No. 8).  Specifically, the plaintiff argues that the ALJ erred when he found N.W. to have a less than marked limitation in the following three domains of functioning: (1) attending and completing tasks, (2)  interacting and relating with others, and (3) caring for yourself.  (Dkt. No. 8).  The Commissioner counters that the ALJ's determinations were proper.  (Dkt. No. 10).

9

**Whether ALJ erred in not considering N.W.'s ODD and CD as severe impairments**

The plaintiff argues that the ALJ erred when he did not consider N.W.'s diagnoses of ODD and CD, ultimately finding that these conditions did not constitute severe impairments at step two of the evaluation process.  (Dkt. No. 8).  The plaintiff argues that when the ALJ opined that N.W.'s behavior was "driven by selfishness and lack of self-control" despite Dr. Panahon and NP Turk's diagnoses of ODD and CD, this constituted the ALJ substituting his judgment for that of medical professionals.  (Dkt. No. 8).  The Commissioner counters that the ALJ adequately considered all diagnosed conditions and treatment.  (Dkt. No. 10).

When a child has been diagnosed with a behavioral disorder, an ALJ cannot solely rely on his own determination that the child's behavioral problems are merely poor "choices."  See Brown ex rel. J.B. Colvin, No. 1:12-CV-1062, 2015 WL 1647094, at *4, 5 (W.D.N.Y. Apr. 14, 2015) (it was improper for ALJ to find less than marked limitation in a functional domain because of the ALJ's determination that the child's problems were the result of choice).  Likewise, an ALJ cannot over-rely on the child's behavior at an administrative hearing.  See Brown, 2015 WL 1647094 at *5 (it was improper for ALJ to over-rely on the child's "calm and attentive" behavior at the hearing).

In the present case, the ALJ did characterize N.W.'s behavior as "driven by selfishness and lack of self-control."  Tr. 62.  The ALJ also noted that N.W. stopped "messing" with the microphone at the hearing when the ALJ told him to stop.  Tr. 63.  These observations alone might not have been enough.  However, the ALJ went beyond these observations.   The ALJ noted that N.W.'s behavior was manageable when he took his medication, N.W. was able to return to tasks when redirected, N.W. could follow multi-step tasks with a 70% success rate, and N.W. got along with his peers.  Tr. 62-63.  The ALJ also noted that N.W. stopped grabbing at

items when he was told to do so during his evaluation.  Tr. 63.  These observations go beyond

the ALJ's comments about "selfishness and lack of self-control" and N.W.'s behavior during the

hearing and therefore the ALJ's ultimate finding is supported by substantial evidence.  <u>See</u>

<u>Brown</u>, 2015 WL 1647094 at *4, 5.

 The above analysis notwithstanding, an ALJ does not need to identify all potential

impairments at step two of the sequential evaluation process when he addresses the child's

symptoms in his analysis.  <u>See</u> <u>Golden v. Comm'r of Soc. Sec.</u>, No. 8:14-cv-2129, 2015 WL

9694504 at *6 (M.D. Fla. Dec. 9, 2015) (although ALJ did not make an explicit determination as

to whether ODD was a severe impairment at step two, the error was harmless because the ALJ

gave full consideration to the child's ODD symptoms at later stages of the analysis); <u>Rice ex rel.</u>

<u>T.C.K. v. Astrue</u>, 32 F. Supp. 3d 113, 120-21 (N.D.N.Y. 2012) (the ALJ's failure to address the

ODD at step two was harmless because the ALJ found that the child had other severe

impairments such as ADHD and continued with the balance of the sequential evaluation);

<u>Newsome ex rel. Bell v. Barnhart</u>, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006) (the ALJ's

failure to make an explicit determination as to whether ODD constituted a severe impairment at

step two was harmless because the ALJ thoroughly discussed the evidence in the record

concerning the child's oppositional behavior).

 In the present case, the ALJ did not find N.W.'s ODD and CD to be severe impairments

at step two of the sequential evaluation process, however the ALJ discussed N.W.'s oppositional

behavior in his decision and considered this behavior in his functional equivalence domain

analysis at step three.  Tr. 54-69.  For example, the ALJ discussed how N.W gets upset when he

does not get what he wants and misbehaves when challenged.  Tr. 66.  Therefore, the ALJ's

failure to find ODD and CD to be severe impairments at step two was harmless.  See Golden,

2015 WL 9694504 at *6; Rice, 32 F. Supp. 3d at 120-21; Newsome, 444 F. Supp. 2d at 1200-01.

**Whether ALJ erred in not finding N.W.'s GI problem to be a severe impairment**

The plaintiff also argues that the ALJ erred when he did not find N.W.'s diagnosed GI

problem to be a severe impairment at step two of the evaluation process.  (Dkt. No. 8).  The ALJ

justified his finding by stating that the GI problem "was not likely to last the required twelve

months," and that N.W. wore diapers in case he could not get to the bathroom.  Tr. 57.  The ALJ

did not appear to address the GI problem any further in his decision.

Under the Social Security Act, a "disability" must have lasted or can be expected to last

for a continuous period of not less than twelve months.  20 C.F.R. § 404.1505.  Accordingly, an

individual does not need to have had the impairment for twelve consecutive months at the time

of adjudication to be entitled to benefits.  See Barnhart v. Walton, 535 U.S. 212, 224 (2002); see

also McDonald v. Bowen, 818 F.2d 559, 563 (7th Cir. 1986), rev'd on other grounds, Walton,

535 U.S. at 225.  Rather, the Social Security Act "requires only a prediction that the disability

will continue for at least twelve consecutive months after the onset of the disability.  The

requirement is therefore forward-looking and is not to be nullified by hindsight."  McDonald,

818 F.2d at 563 (citing Sierakowski v. Weinberger, 504 F.2d 831, 835-36 (6th Cir. 1974)).

In the present case, N.W.'s application was filed on August 10, 2011, alleging an onset

date of June 1, 2011.  Tr. 54.  In a July 26, 2013 letter discussing N.W.'s bowel cleanout with

polyethylene glycol, Dr. Adrian Chapa explained that N.W. had been suffering with chronic

constipation and encopresis "for the last 2 years."  Tr. 395.  In a September 11, 2013 medical

report, Dr. Razan Alkhouri explained in his patient history that N.W. was suffering from

encopresis, had been wearing diapers for the past two years, had been to the emergency room

over three times in the past year, and had several cleanouts with no improvement.  Tr. 384.  Dr.

Alkhouri also noted N.W.'s mother reported that N.W. had rock hard stool with occasional

blood, and N.W.'s mother had tried to "take out" the stool with a butter knife when N.W. was

unable to pass it.  Tr. 384.  Additional medical reports discuss N.W.'s constipation issues as well.

Tr. 401-09.   Based on this information, the record suggests that N.W. suffered from chronic

constipation and encopresis for a period greater than twelve months.  Additionally, the fact that

several "cleanouts" showed no improvement suggests that N.W.'s constipation and encopresis

would likely continue for the time being, as the proposed "gut retraining program" did not appear

to completely solve the problem according to N.W.'s mother.  Tr. 25.

       Even when a claimant is represented by counsel, "the Social Security ALJ, unlike a judge

in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial

nature of the benefits proceeding."  See Morgan v. Astrue, 569 F.3d 108, 122 (2d Cir. 2009).

The ALJ must "make every reasonable effort to help [the claimant] get medical records from [the

claimant's] own medical sources."  20 C.F.R. § 404.1512(d).  Reasonable effort includes

requesting appropriate medical records.  See Drake v. Astrue, 443 F. App'x 653, 656 (2d Cir.

2011); see also 20 C.F.R. § 416.912(d)(1).

       In light of this, the ALJ needs to address the sufficiency of the current records and

whether other records should have been obtained.  See Drake, 443 F. App'x at 656; Morgan, 569

F.3d at 122.  For example, the ALJ might request any records of N.W.'s emergency room visits

or any other records of N.W.'s chronic constipation and encopresis during the two year period

described in N.W.'s 2013 medical reports.  This Court is taking no position on the ultimate

outcome of this inquiry, but this inquiry is necessary in order for the ALJ to reach a

determination in accordance with the Social Security Act.

**Step Three: functional equivalence to the listings**

The following is an assessment of the functional domains for N.W.'s ODD, CD, and ADHD.  Whether the domains might be affected by N.W.'s GI history is left for the ALJ to assess in the first instance.  For example, at step two, the ALJ might request any record of N.W. encountering social or personal hygiene problems as a result of his chronic constipation and encopresis, as this might affect the ALJ's functional domain analysis.

*1.   Attending and completing tasks*

The domain of "attending and completing tasks" focuses on a child's ability to focus and maintain attention, and begin and finish activities.  20 C.F.R. § 416.926(a)(h).  A school-age child should be able to focus his attention on a variety of situations, remember and organize his school materials, and complete classroom and homework assignments.  20 C.F.R. § 416.924(a)(h)(v).  He should be able to concentrate on details and not make careless mistakes in his work.  20 C.F.R. § 416.924(a)(h)(2)(iv).  He should also be able to change activities or routines without distracting himself or others, and stay on task and in place when appropriate.  Id.  He should be able to sustain his attention long enough to participate in group sports, read by himself, and complete chores.  Id.  Lastly, the child should be able to transition between tasks without extra reminders.  Id.

An adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects.  20 C.F.R. § 416.924(a)(h)(v).  He should be able to organize his materials and plan his time in order to complete school tasks and assignments.  Id.

The child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting.  Id.

There are multiple examples of limited functioning in this domain.  The court should examine: (1) whether the child is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (2) whether the child is slow to focus or fails to complete activities of interest; (3) whether the child becomes repeatedly sidetracked from activities or frequently interrupts others; and (4) whether the child is easily frustrated and gives up on tasks. 20 C.F.R. § 416.924(a)(h)(3).

In the present case, the ALJ found that N.W. had a less than marked limitation in this domain because N.W. was able to attend when he takes his medication, although the ALJ noted that N.W. did not always take his medication consistently.  Tr. 65.  The ALJ also noted N.W. liked to play sports, color, draw, and play with the computer without any indicated problems.  Tr. 65.

When an ALJ finds a less than marked limitation in a functional domain because of a child's improvement from medication, this can constitute substantial evidence.  See Parker v. Comm'r of Soc. Sec., No. 06-CV-711, 2008 WL 4553070 at *8 (N.D.N.Y. Oct. 7, 2008) (ALJ's finding of less than marked limitation was supported by substantial evidence because treating physician and state agency physicians noted child, diagnosed with ADHD, continued to improve with medication); Cf. Keene ex rel. J.T. v. Astrue, No. 07-CV-0016, 2009 WL 1924763 at *7 (N.D.N.Y. July 1, 2009) (ALJ's finding of less than marked limitation was not supported by substantial evidence because evidence showed child still had severe ADHD problems even with medication).

Here, N.W.'s teachers and his own mother explained that N.W. exhibited improvement when he was on medication.  Tr. 331-35, 474-93.  Additionally, N.W.'s March 2013 psychopharmacology progress notes show that N.W. was improving with his medication.  Tr. 452.  Therefore, the ALJ's determination was supported by substantial evidence.  See Parker, 2008 WL 4553070 at *8.

2.  *Interacting and relating with others*

The domain of "interacting and relating with others" examines how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926(a)(i).  A school-age child should be able to develop lasting friendships with other children.  20 C.F.R. § 416.926(a)(i)(2)(iv).  He should be able to work in groups and solve problems.  Id.  He should understand other viewpoints, and tolerate different opinions.  Id.  Lastly, he should be able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner readily understandable to familiar and unfamiliar listeners.  Id.

An adolescent should be able to initiate and develop friendships with children of the same age and relate appropriately to other children and adults.  20 C.F.R. § 416.924(a)(i)(2)(v).  He should focus less attention on parents and more on relationships with peers, and develop an increasing desire for privacy.  Id.  He should be increasingly able to solve conflicts with peers, family members, or adults outside of the family.  Id.  He should recognize that there are different social rules for dealing with his friends and acquaintances compared to dealing with adults.  Id.  He should be able to intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stores, in all environments and with all people.  Id.

16

There are multiple examples of limited functioning in this domain, such as: (1) reaching out to be held by a caregiver; (2) lacking age-appropriate friends; (3) avoiding or withdrawing from social interactions and new experiences; (4) having difficulty playing games or sports with rules; (5) having difficulty communicating; and (6) having difficulty speaking intelligently or with adequate fluency.   20 C.F.R. § 416.926(a)(i)(3).

In the present case, the ALJ found that N.W. had a less than marked limitation in this domain.  Tr. 66.  As the court in <u>Brown</u> made clear, an ALJ cannot rest his decision purely on his determination that a child's behavior is the result of "choice."  2015 WL 1647094 at *5.  Here, although the ALJ did opine that much of N.W.'s behavior was "what [he] wants to do" and "driven by selfishness and lack of self-control," the ALJ also explained that N.W. was doing well playing on the football team, N.W.'s teachers reported a positive response to the ADHD medication, N.W. goes out independently in his neighborhood, N.W. has friends that he "hangs out" with, N.W. likes to play games with his friends, and N.W. likes wrestling and boxing.  Tr. 66-67.  On the other hand, the ALJ pointed out that N.W gets upset when he does not get what he wants, does not think before he acts, and misbehaves when challenged.  Tr. 66.

Additionally, as stated earlier in this opinion, when an ALJ finds a less than marked limitation in a functional domain because of a child's improvement from medication, this can constitute substantial evidence.  <u>See Parker</u>, 2008 WL 4553070 at *8.  Here, the ALJ based his determination in part on N.W.'s positive response to his ADHD medication.  Tr. 66-67.

Although there appears to be evidence on both sides of the argument, the ALJ's finding that N.W. has a less than marked limitation in this domain is supported by substantial evidence. <u>See</u> <u>Archer v. Astrue</u>, 910 F. Supp. 2d 411, 425 (N.D.N.Y. 2012) ("the record is inconclusive . . . yet regardless of whether this Court could justifiably reach an alternative conclusion . . .

substantial evidence bolsters the hearing officer's position, and as result, this Court must accord

the decision due deference").  Accordingly, this Court affords the ALJ's determination due

deference because the determination is supported by substantial evidence.  See id.

*3.  Caring for self*

The domain of "caring for self" examines how well a child maintains a healthy emotional

and physical state, including how well he gets his physical and emotional wants and needs met in

appropriate ways.  20 C.F.R. § 416.926(a)(k).  A court should consider how the child copes with

stress and changes in his environment, and whether the child takes care of his own health,

possessions, and living area.  Id.

A school-age child should be independent in most day-to-day activities (i.e. dressing and

bathing), although he may still need to be reminded at times to do these routinely.  20 C.F.R. §

416.926(a)(k)(2)(iv).  He should begin to realize that he is competent in some activities but has

difficulty in others.  Id.  He should be able to identify those circumstances when he feels good

about himself and when he feels bad.  Id.  He should begin to develop an understanding of what

is right and wrong, and what is acceptable and unacceptable behavior.  Id.  He should begin to

demonstrate consistent control over his behavior and avoid behaviors that are unsafe or not good

for him.  Id.

An adolescent should feel more independent from others and be increasingly independent

in all of his day-to-day activities.  20 C.F.R. § 416.926(a)(k)(2)(v).  He should begin to discover

appropriate ways to express his feelings, good and bad.  Id.  He should maintain personal

hygiene adequately (i.e. bathing, brushing teeth, wearing clean clothing appropriate for weather

and context).  He should take medications as prescribed.  Id.

There are several examples of limited functioning in this domain, such as a child who: (1) places non-nutritive or inedible objects in his mouth; (2) engages in self-soothing or stereotyped activities that show developmental regression; (3) cannot dress or bathe himself appropriately; (4) engages in self-injurious behavior; (5) does not spontaneously pursue enjoyable activities or interests; and (6) has disturbances in eating or sleeping patterns.  20 C.F.R. § 416.926(a)(k)(3).

In the present case, the ALJ found N.W. had no limitation in this domain.  Tr. 69.  When an ALJ's finding of a less than marked limitation in the domain of "caring for yourself" is based on independence in personal care, grooming, and rule-following, this constitutes substantial evidence.  See Jones ex rel. S.A. v. Astrue, No. 07-CV-0016, 2009 WL 1924763 at *7 (N.D.N.Y. July 1, 2009) (ALJ's finding of less than marked limitation was supported by substantial evidence because child was independent in personal care, well-groomed, and had knowledge of and followed rules).  Here, the ALJ explained his determination of a less than marked limitation by stating that N.W. could dress, bathe, and groom himself age appropriately.  Tr. 69.  The ALJ also stated that N.W. helps in his house with dishes and picking up his room.  Tr. 69.  Although the ALJ could have elaborated on these observations, the reasons he gave constitute substantial evidence.  See Jones, 2009 WL 1924763 at *7.


## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is vacated in part and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The ALJ should obtain the relevant medical records relating to N.W.'s GI problem and reevaluate the case as explained above.

The plaintiff's motion for judgment on the pleadings (Dkt. No. 8) accordingly, is granted in part.  The plaintiff's motion is denied to the extent that it argues the ALJ erred in regard to N.W.'s ODD and CD, as well as the ALJ's functional domain analysis. The Commissioner's cross-motion (Dkt. No. 10) is granted in part.

The Clerk of the Court is directed to close this case.

So Ordered.


                                            s/Hugh B. Scott
                                         Hon. Hugh B. Scott
                                         United States Magistrate Judge

Buffalo, New York
August 15, 2016